UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

STEPHANIE P. JOHNSON-KENNEDY,

                Plaintiff,

v.                                               6:02-CV-1259
                                                (LEK/GHL)
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

APPEARANCES:                                               OF COUNSEL:

STEPHANIE P. JOHNSON-KENNEDY
Plaintiff *Pro Se*
220 Green Street, #7H
Albany, New York 12202

HON. GLENN T. SUDDABY                          WILLIAM H. PEASE, ESQ.
Office of the United States Attorney              Assistant United States Attorney
Counsel for Defendant
P.O. Box 7198
100 S. Clinton Street
Syracuse, New York 13261-7198

GEORGE H. LOWE, United States Magistrate Judge

### REPORT AND RECOMMENDATION[1]

**I.     BACKGROUND**

    **A.     The Dixon Class Action**

An understanding of the matters at issue in this action requires some familiarity with class action litigation that was commenced in the Southern District of New York in 1984. *See*,

---

[1] This matter was referred to me for report and recommendation by the Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

*generally*, *Dixon v. Shalala*, 54 F.3d 1019 (2d Cir. 1995). That litigation was initiated on behalf of more than 200,000 claimants whose applications for benefits were denied on the basis of what the Southern District trial court in 1992 found to be systematic and covert misapplication of the disability regulations (the "1992 Opinion").

> Plaintiffs, who were denied disability benefits on the grounds that their impairments were found to be "not severe," brought this class action in 1984 to challenge what they alleged was a policy by the Secretary to heighten the threshold standards for benefits. In the 1992 Opinion, the district court found that the Secretary and Social Security Administration ("SSA") adjudicators, between June 1976 and July 1983, engaged in systematic and clandestine misapplication of disability regulations concerning "severe" impairments and illegally implemented a policy involving "noncombination" of impairments, causing plaintiffs' disabilities to be classified as "non-severe" and their applications to be denied without full review. Because the court found the agency's misapplication of the regulations to be covert as well as illegal, it concluded that disability claimants could not reasonably have been expected to know of the practice. Consequently, the court equitably tolled the statute of limitations governing appeals of disability denials, allowing claimants to appeal their denials even if they had failed to bring suit within the 60-day statutory period or to exhaust their administrative remedies.

*Dixon*, 54 F.3d at 1020-1021. The District Court ultimately determined that the class included applicants whose benefits were denied or terminated after June 1, 1976.

    **B.**    **Plaintiff's Applications for Benefits**

        **1.**    **The November 8, 1978 Application**

Plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") on November 8, 1978. (Administrative Transcript ("T.") at 12; Dkt. No. 18 at 2.) These applications were denied on March 12, 1979. (T. at 11.) Plaintiff was subsequently identified as a *Dixon* class member and her applications were readjudicated (the

"Dixon Applications"). (*Id.*) Hearings were held on July 27, 2001 and December 21, 2001. (T. at 25-38, 39-60.) On February 28, 2002, Administrative Law Judge ("ALJ") Robert Wright found that Plaintiff was engaged in "a period of competitive employment which lasted for more than six months after her 1978 applications were denied, with earnings above the levels set forth in 20 CFR 404.1574 and 20 CFR 416.974." (T. at 12.) Accordingly, ALJ Wright found that the *Dixon* "presumption of nondisability" applied and Plaintiff was not entitled to benefits based on her Dixon Applications. (T. at 13.) Plaintiff appealed to the Appeals Council, and the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on August 3, 2002. (T. at 2-3.) Plaintiff commenced this action on October 3, 2002. (Dkt. No. 1.)

### 2. The April 17, 1990 Application

Plaintiff filed another application for SSI on April 17, 1990 in Virginia (the "Virginia Application"). (Dkt. No. 13, Ex. A at 1; Dkt. No. 18 at 2 n.2.) It was denied initially and upon reconsideration. (Dkt. No. 13, Ex. A at 1.) A hearing was held and on March 5, 1991, ALJ David S. Antrobus, an administrative law judge in Richmond, Virginia, found that Plaintiff was disabled as of April 17, 1990. (Dkt. No. 13, Ex. A at 5.)

## III. DISCUSSION

### A. Plaintiff's *Pro Se* Pleadings

Plaintiff was represented by counsel at the July 27, 2001 and December 21, 2001 hearings, in connection with the Dixon Applications, as well as at the March 5, 1991 hearing, in connection with the Virginia Application. (T. at 25, 39; Dkt. No. 13, Ex. A at 1.) Plaintiff is proceeding *pro se* in the matter before this Court.

When Plaintiff filed her complaint, which commenced this action before the Court, she filled out a "Form Complaint for Appeal of a Decision by the Commissioner of Social Security." (Dkt. No. 1.) The form states that "[a] copy of the Action of the Appeals Council is attached to this Complaint." (Dkt. No 1 ¶ 3.) Plaintiff attached the August 3, 2002 Appeals Council decision which denied her request for review of the ALJ's February 28, 2002 decision regarding the Dixon Applications, which was also attached to her complaint. In addition, Plaintiff also attached a copy of the ALJ's April 16, 1991 decision with regard to her Virginia Application.

To be clear, the "Form Complaint for Appeal of a Decision by the Commissioner of Social Security" specifically states that the Plaintiff is complaining of a decision which **adversely affected her**, which is the final decision of the Commissioner, as evidenced by the Action of the Appeals Council attached to the complaint. *See* 20 C.F.R. §§ 404.981, 416.1481 (2005). The decision attached to Plaintiff's complaint which **adversely affected her** is the ALJ's February 28, 2002 decision regarding the Dixon Applications; the ALJ's April 16, 1991 decision regarding the Virginia Application was favorable to Plaintiff. From a liberal reading of her brief (Dkt. No. 13) and the hearing transcripts (T. at 25-38, 39-60), it appears that Plaintiff is complaining that (1) she was awarded benefits under her Virginia Application but she either never received those benefits or they were terminated at some point in time; (2) under her Dixon Applications, she was entitled to DIB because she "had enough quarters to be eligible as of April 17, 1990"; and (3) that the ALJ erred in finding that the *Dixon* presumption of nondisability applied and thus she was not entitled to benefits. (Dkt. No. 13.)

**B.     Plaintiff's Virginia Application**

Plaintiff argues that with regard to her Virginia Application, she was awarded benefits but

"never received [her] award." (Dkt. No. 13 at 1.)  Indeed, she was awarded benefits; ALJ Antrobus found Plaintiff disabled and awarded her SSI on April 16, 1991.[2] (Dkt. No. 13, Ex. A.) At her December 21, 2001 hearing, Plaintiff testified that she was no longer receiving SSI under the Virginia Application:

> ALJ: Excuse me.  Let me just –
>
> Atty: I'm sorry.
>
> ALJ: – clarify something, here.  Now you were granted disability benefits in 1991 on your application from 1990, apparently?  Are you still getting SSI benefits at this point?
>
> Clmt: No.
>
> ALJ: You didn't get them because your husband was making too much – or, you had too much income.  Is that correct?
>
> Clmt: Yes.
>
> ALJ: Okay.

(T. at 55-56.)  Thus, from Plaintiff's own testimony, it appears as though her benefits may have been suspended and/or terminated because she may have been ineligible to receive them due to excess income.  *See* 20 C.F.R. §§ 416.1100, 416.1323(a), 416.1335 (2005) (regarding eligibility, suspension of benefits due to excess income, and termination of benefits due to continuous suspension).  If this were the case, Plaintiff would have received advance notification of the

---

[2] To be clear, Plaintiff filed two separate applications; Plaintiff's Virginia Application, filed on April 17, 1990, sought SSI and alleged disability due to a back condition, impaired function of her right arm, and depression. (Dkt. No. 13, Ex. A at 1.) Plaintiff's Dixon Applications sought DIB and SSI and was filed on November 8, 1978. (T. at 11.) Plaintiff was found to be disabled with regard to her Virginia Application, whereas she was found not disabled regarding her Dixon Applications. (Dkt. No. 13, Ex. A; T. at 11-13.)

SSA's intent to discontinue payment.³  20 C.F.R. § 416.1336(a) (2005).

If Plaintiff is indeed attempting to challenge the fact that she was awarded benefits, but never received them because, perhaps, her and/or her husband's income level(s) rendered her ineligible to receive benefits, this Court lacks subject matter jurisdiction over the claim since there is no evidence that she administratively challenged the termination of her benefits.  Under the Code of Federal Regulations, the SSA's decision to suspend, reduce, or terminate SSI is an initial determination.  20 C.F.R. § 416.1402(b) (2005).  "An initial determination is binding unless [a claimant] request[s] a reconsideration within the stated time period, or [the SSA] revise[s] the initial determination."  20 C.F.R. § 416.1405 (2005).  Accordingly, a claimant who is dissatisfied with an initial determination may request reconsideration, which is the first step in the administrative review process.  20 C.F.R. § 416.1407 (2005).  If, upon reconsideration, the claimant is dissatisfied with the determination, he/she may request a hearing before an ALJ.  20 C.F.R. §§ 416.1407, 416.1429 (2005).  If the ALJ renders a decision that is unfavorable to the

---

³  Plaintiff's testimony references a letter that she received, but it is unclear whether this letter was her notification of the SSA's intent to discontinue payment.  At her December 21, 2001 hearing, Plaintiff stated:

> Clmt:  And then, they sent me one check several months back, I can't remember the exact month.  It's somewhere in that house.  He photocopied it.  Then, they sent a letter, that's the one you told me [INADUIBLE].  You remember that check?
>
> Atty:  Yeah.
>
> Wtn:  For $400.
>
> Clmt:  Okay?  And then, they said that I shouldn't have never gotten it.  They overpaid me.  I'm so confused.

(T. at 56.)  The Court notes that the witness was Plaintiff's husband.  (T. at 39.)

claimant, he/she may then seek review from the Appeals Council.  20 C.F.R. § 416.1467 (2005). "A determination is only final after the Appeals Council has denied review or decided the case after review.  It is at that point that there is a final decision subject to judicial review under 42 U.S.C. § 405(g)."  *Mathews v. Chater*, 891 F. Supp. 186, 188 (S.D.N.Y. 1995) (internal citation omitted).  *See also* 20 C.F.R. § 416.1481 (2005).

Here there was no "final decision of the Commissioner," which is necessary before a federal court can review any Social Security benefit determinations.  42 U.S.C. § 405(g) (2005). *See also Heckler v. Ringer*, 466 U.S. 602, 617 (1984) and *Califano v. Sanders*, 430 U.S. 99, 108 (1977).  As a result, this Court lacks subject matter jurisdiction to review Plaintiff's claim with respect to her Virginia Application.

### C.     Plaintiff's Dixon Applications

#### 1.     The Eligibility Argument

Based upon a liberal reading of Plaintiff's brief and from her hearing testimony, it appears that she may be trying to argue that she is entitled to DIB because she had sufficient "quarters to be eligible as of April 17, 1990" under her Dixon Applications.  (Dkt. No. 13 at 1.)

As stated above, a "final decision of the Commissioner," is necessary before a federal court can review any Social Security benefit determinations.  42 U.S.C. § 405(g).  *See also Heckler*, 466 U.S. at 617 and *Califano*, 430 U.S. at 108.  Here there is no indication in the record that Plaintiff's eligibility claim, *i.e.*, that she had sufficient "quarters to be eligible as of April 17, 1990," was even brought before ALJ Wright.  His decision does not make any findings regarding Plaintiff's eligibility for DIB.  As a result there is no evidence that even an  initial determination was rendered on the eligibility issue, much less a final decision of the Commissioner, and

therefore the Court lacks jurisdiction to address the issue.

## 2. The Dixon "Presumption of Nondisability"

At the hearings in 2001 on Plaintiff's Dixon Applicaitons, the records from 1978 and 1979 were not available. (T. at 347.) As a result, certain rebuttable presumptions were applicable.

> If records cannot be located for any class member, either because SSA has destroyed them pursuant to its published file retention schedules, 44 U.S.C. ch. 21, 29, 31 and 36 C.F.R. ch. XII, or SSA is unable to locate them, certain rebuttable presumptions apply, which serve to reduce the number of plaintiffs whose claims must be readjudicated. A class member whose records cannot be located will be presumed to be disabled if he or she received a decision awarding disability benefits for any period of disability subsequent to the one that forms the basis of class membership, and (1) it is medically reasonable to presume that he or she was disabled as of the date of the prior denial, or (2) he or she was 55 years of age or older at the time of the denial. Conversely, there will be a rebuttable presumption that a class member is *not* disabled if (1) he or she received a denial or termination of benefits subsequent to the one that forms the basis of class membership; (2) he or she was employed for at least six months following the denial or termination; or (3) a claim was reviewed and denied pursuant to a related class action.

*Dixon*, 54 F.3d at 1034-35 (citations omitted) (emphasis in original).

Although Plaintiff does not make any arguments regarding whether the *Dixon* presumptions apply to her, at the December 21, 2001 hearing her attorney identified this as the "real issue" (T. at 58), and this issue was the crux of ALJ Wright's February 28, 2002 decision (T. at 11-13). Therefore, the Court will treat Plaintiff's pleadings as complaining of ALJ Wright's decision on this issue, which adversely affected her (*see supra* at 4), and became the final determination of the Commissioner when the Appeals Council denied review on August 3,

2002.[4]  (T. at 2-3.)

### a.   Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Brown v. Barnhart*, Civ. No. 02-4523, 2003 WL 1888727, at *4 (S.D.N.Y. Apr. 15, 2003); *Serrano v. Barnhart*, 2003 WL 22683342, at *10; *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson*, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Serrano*, 2003 WL 22683342, at *10; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a

---

[4]  Furthermore, Plaintiff attached the Appeals Council's decision to her complaint.  (Dkt. No. 1.)

reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258.  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972); *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

      **b.**  **Analysis**

   There is substantial evidence to support ALJ Wright's finding that, under *Dixon*, the presumption of nondisability applies to Plaintiff because she engaged in a period of competitive employment which lasted for more than six months after her 1978 applications were denied, and her earnings were in excess of those set forth in 20 C.F.R. §§ 404.1574, 416.974.  As a result, Plaintiff was not entitled to benefits based upon her Dixon Applications.  (T. at 12-13.)

   Plaintiff filed her applications for DIB and SSI on November 8, 1978 .  (T. at 12; Dkt. No. 18 at 2.)  These applications were denied initially on March 12, 1979, and upon reconsideration on April 12, 1979.  (T. at 11, 341; Dkt. No. 18 at 2.)  Thereafter, Plaintiff was identified as a *Dixon* class member.  (T. at 11, 340-342.)  Upon resubmission of her claims, the SSA was unable to locate her original applications and medical evidence.  (T. at 347.)  Accordingly, certain *Dixon* presumptions applied.  *Dixon*, 54 F.3d at 1034-35.  Because Plaintiff's Dixon Applications were denied initially and upon reconsideration (T. at 337, 341-342; Dkt. No. 18 at 2), the applicable rebuttable presumption was that Plaintiff was **not** disabled if she was employed for at least six months following the denial or termination.  *Dixon*, 54 F.3d at 1035.

The ALJ determined that Plaintiff was engaged in substantial gainful activity for at least six months following the denial of her Dixon Applications and earned more than the regulatory limit. (T. at 12.) In doing so, the ALJ relied upon the earnings guidelines set forth in the Code of Federal Regulations. 20 C.F.R. §§ 404.1574, 416.974 (2005). If a claimant is working and earns more than the regulatory limit, then he/she is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1574(b), 416.974(b) (2005).

### a. The Six Month Requirement

Plaintiff's own testimony at her July 27 and December 21, 2001 hearings establishes that she worked for at least six months after the denial after her Dixon Applications. At her December 21, 2001 hearing, Plaintiff testified that worked as a nurse's assistant in 1987, 1988, and 1999.[5] (T. at 45-46.) Plaintiff stated that she worked approximately thirty-seven to forty hours per week at a rate of $4.50 to $5.25 per hour. (T. at 92.)

Plaintiff also testified that she worked as an assistant at Hair Again, Limited, a hair and scalp treatment center, in 1983 and/or 1984. (T. at 48.) Notably, Plaintiff stated at the July 27, 2001 hearing[6] that she had worked full time between 1978 and 1988. (T. at 31-32.) Upon further questioning, she confirmed that she worked full time until she was hurt in 1989. (T. at 29, 33.)

In addition, in her brief, Plaintiff cites to further evidence of her employment by directing the Court's attention to a letter from Ms. Yolanda Parkman. (Dkt. No. 13 at 1.) In her notarized letter, Ms. Parkman states that Plaintiff and she worked at Hair Replacement Systems for Mr.

---

[5] In a vocational history report, Plaintiff claimed that she worked as a nurse's assistant from 1998 through May 12, 1989. (T. at 92.)

[6] The Plaintiff was never duly sworn at this hearing, nonetheless, the ALJ and Plaintiff's attorney questioned her and she responded, as reflected in the transcript. (T. at 25-38.)

John Stout. (T. at 317.) Although Ms. Parkman only worked there from May 15 through 19, 1987, she states that Plaintiff was employed there from February 26, 1986 though May 19, 1987.[7] (*Id.*) However, Ms. Parkman states that they were paid in cash, and neither received a W-2 form. (*Id.*) It is unclear how much money Plaintiff earned. Nonetheless, regardless of any money earned during her employment with Hair Replacement Systems, or how long she worked there, there is sufficient evidence of Plaintiff's other employment and earnings, as explained below, to constitute substantial gainful activity.

The Court notes that under *Dixon*, if a claimant "was employed for at least six months following the denial or termination," this alone is sufficient for the rebuttable presumption of nondisability to apply. *Dixon*, 54 F.3d at 1035. The ALJ also found that Plaintiff's earnings, which exceeded the regulatory minimum, constituted substantial gainful activity. (T. at 12.) Thus the ALJ found that the presumption of nondisability applied because of Plaintiff's earnings coupled with her employment. These findings are supported by substantial evidence.

### b. The Earnings Requirement

The Code of Federal Regulations states: "[w]e will consider that your earnings from your work activity as an employee . . . show that you engaged in substantial gainful activity if: (i) *Before January 1, 2001*, they averaged more than the amount(s) in Table 1 of this section for the time(s) in which you worked." 20 C.F.R. §§ 404.1574(b)(2)(i), 416.974(b)(2)(i) (2005). Table 1 states:

---

[7] Plaintiff corroborated this statement at her July 21, 2001 hearing by stating: "The last job – the job that's in question, Judge, I think, would be when I worked for John Stouts [phonetic]. And, that was a job I worked for one year . . . ." (T. at 46.)

12

| For months: | Your monthly earnings averaged more than: |
|---|---:|
| In calendar years before 1976 . . . . . . . . . . . . . . . . . . | $200 |
| In calendar year 1976 . . . . . . . . . . . . . . . . . . . . . . . . | 230 |
| In calendar year 1977 . . . . . . . . . . . . . . . . . . . . . . . . | 240 |
| In calendar year 1978 . . . . . . . . . . . . . . . . . . . . . . . . | 260 |
| In calendar year 1979 . . . . . . . . . . . . . . . . . . . . . . . . | 280 |
| In calendar years 1980 – 1989 . . . . . . . . . . . . . . . . . . | 300 |
| January 1990 – June 1999 . . . . . . . . . . . . . . . . . . . . | 500 |
| July 1999 – December 2000 . . . . . . . . . . . . . . . . . . . . | 700 |

20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2) (2005).

Plaintiff's earnings records show that she earned (rounded down to the nearest dollar amount) $2,056.00 in 1987; $8,190.00 in 1988; and $3,423.00 in 1989. (T. at 62, 95, 327, 336, 357, 363.)

Upon averaging Plaintiff's earnings in 1988 over the course of twelve months, because as stated above Plaintiff stated that she worked full time until she was hurt in 1989, her earnings exceed the amount set forth in 20 C.F.R. §§ 404.1574(b)(2), 416.974(b)(2). Specifically, Plaintiff's average monthly earnings in 1988 were $682.50. Thus, since Plaintiff's average monthly earnings exceed the amount set forth by the Code of Federal Regulations, Plaintiff is considered to have engaged in substantial gainful activity. *Id.*

Thus, the *Dixon* presumption that Plaintiff is not disabled applies because Plaintiff was employed for at least six months following her denial or termination and Plaintiff has failed to rebut this presumption. Furthermore, Plaintiff's earnings in 1988 exceeded the regulatory limit. Accordingly, the ALJ's findings are supported by substantial evidence.

13

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the decision of the Commissioner be **AFFIRMED** and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: May 9, 2006
       Syracuse, New York

George H. Lowe
United States Magistrate Judge